UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

DAVID EVAN SCHORR,

                Plaintiff,               15 Civ. 4054

   -against-                       OPINION

A. GAIL PRUDENTI, in her official
capacity as Chief Administrative Judge
of the Courts of New York State,
JORGE DOPICO, in his official capacity
as Chief Counsel of the First Judicial
Department Disciplinary Committee in
New York State; ERNEST J. COLLAZO, in
his official capacity as Chairman of
the First Judicial Department Disciplinary
Committee in New York State; and the FIRST
JUDICIAL DEPARTMENT DISCIPLINARY
COMMITTEE in New York State,

                Defendants.

------------------------------------------

A P P E A R A N C E S:

      Pro Se

      SCHORR ASSOCIATES
      115 E. 87th Street, 6a
      New York, NY 10128
      By:  David E. Schorr, Esq.

      Attorney for the Defendants

      ERIC T. SCHNEIDERMAN
      Attorney General of the State of New York
      120 Broadway
      New York, NY 10271
      By:  Anthony J. Tomari, Esq.

**Sweet, D.J.,**

Defendants A. Gail Prudenti, the former Chief Administrative Judge of the New York State Unified Court System ("Prudenti"); the First Judicial Department Disciplinary Committee (the "Disciplinary Committee"); Jorge Dopico, Chief Counsel of the Disciplinary Committee ("Dopico"); and Ernest J. Collazo, Chairman of the Disciplinary Committee ("Collazo") (collectively, the "Defendants") have moved to dismiss the complaint of plaintiff David Evan Schorr ("Schorr" or the "Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Based on the conclusions set forth below, the Defendants' motion is granted and the complaint dismissed.

**Prior Proceedings**

Plaintiff filed his complaint on May 27, 2015 seeking a temporary restraining order, preliminary injunction, and declaratory judgment based on two causes of action brought pursuant to 42 U.S.C. § 1983. (See generally Complaint, Dkt. No. 1.) The first cause of action alleges that the Defendants

1

retaliated against Schorr for engaging in constitutionally-protected speech, while the second alleges that the Defendants violated Schorr's due process rights during an investigation of him by the Disciplinary Committee.  The Court denied Schorr's request for preliminary relief via a bench ruling on September 16, 2015.  (See Dkt. No. 23.)

The Defendants filed their motion to dismiss on July 17, 2015.  (Dkt. No. 9.)  On September 24, 2015, Schorr filed a letter to the Court, asking that his briefing in support of his motion for preliminary relief be taken as his opposition papers for the instant motion as well, with a handful of additional points.  (Dkt. No. 22.)  The Defendants filed their reply papers on October 6, 2015 (Dkt. No. 24), and the motion was heard on October 14, 2015.

**Facts**

The following facts, taken from the Plaintiff's Complaint, are accepted as true for the purpose of the motion to dismiss.

See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).[1]

On October 9, 2013, Schorr attended a conference in New York State Supreme Court, New York County, before Justice Deborah A. Kaplan, concerning a matrimonial action in which he was a party. (See Complaint ¶ 12.) At that conference, and throughout the matrimonial action, Justice Kaplan exhibited "extreme antipathy" to Schorr, leading him to fear that Justice Kaplan "might engage in behavior designed to taint the record" of the case. (See id. ¶¶ 16-17.) Schorr specifically felt threatened by a court security officer named Katz, who "on multiple occasions, had attempted to physically intimidate Plaintiff at Justice's Kaplan's behest." (Id. ¶ 17.) Justice Kaplan excused the court reporter and the attorney representing Schorr's child from the courtroom, at which point "Plaintiff became so concerned for his safety and protection (as well as for the preservation of the record with no court reporter or impartial witness present) that he determined he had no choice but to record the off-the-record proceeding using his iPhone." (See id. ¶ 17.) Justice Kaplan also left the courtroom herself,

---

[1] Because the Amended Complaint repeats the allegations and the motion to dismiss was directed to the initial complaint, the initial complaint will be the pleading considered below. Schorr agreed to waive any mootness issue in his September 22 letter. (See Dkt. No. 22.)

instructing her newly-hired law clerk to conduct the hearing. (Id. ¶¶ 19, 22.)   Justice Kaplan went to her robing room, located behind the bench, but left the door open.   (Id. ¶ 23.)

After 16 minutes and 48 seconds, Officer Katz "lunged at Plaintiff suddenly and with extreme force.   He went from standing nine feet away from Plaintiff to within one foot (by Officer Katz's own admission) of Plaintiff's person in a matter of seconds and without any warning of any kind."   (Id. ¶ 25.) At no point had Plaintiff caused a disturbance of any kind in the courtroom, nor did Plaintiff pose a threat to anyone in attendance.   (Id. ¶ 26.)   After Schorr failed to react to Officer Katz standing over him, Katz "suddenly lunged at Plaintiff again as if to physically grab and attack Plaintiff." (Id. ¶ 28.)   Schorr alleges that this "assault" was an attempt to provoke a reaction and instigate an altercation in order to falsely arrest and detain him.   (Id.)   Officer Katz' actions placed Schorr in immediate fear of bodily harm.   (Id.)

Justice Kaplan then phoned the courthouse's security office to report Schorr for causing a disturbance.   (Id. ¶ 29.)   An officer entered the courtroom and remained in the gallery, without arresting Schorr or otherwise involving himself in the proceeding.   (Id.)   The officer later stated that he did not see

4

Schorr engage in any disruptive action and described the affair as a "non-incident." (Id.)  Justice Kaplan then re-entered the courtroom, ended the conference, and had Officer Katz escort the Plaintiff out of the courtroom and to the elevator.  (See id. ¶ 31.)  Schorr alleges that "at all times, Officer Katz acted at the behest and direction of Justice Kaplan."  (See id. ¶ 35.)

At a hearing on July 1, 2014, Schorr requested that Justice Kaplan recuse herself due to the events that transpired during the October 9th conference.  (See id. ¶ 36.)  Justice Kaplan declined to do so.  (Id. ¶ 37.)

On October 18, 2013, Schorr commenced an action, *pro se*, in the New York Court of Claims, alleging that Officer Katz assaulted him at the October 9, 2013 conference. (The "Court of Claims Action") (See id. ¶ 38.)  He deposed Justice Kaplan as part of the Court of Claims Action on September 19, 2014.  (See id. ¶ 44.)  According to the Complaint, Justice Kaplan's testimony at the deposition "was materially and knowingly false." (Id. ¶ 49.)  Following her deposition, Schorr gave Justice Kaplan a copy of his October 9th recording, as well as a Forensic Audio Report he had made from it, and Justice Kaplan recused herself from Plaintiff's matrimonial action "immediately thereafter," *sua sponte*.  (See id.)  Immediately following the

5

recusal, Justice Kaplan and Prudenti, then New York's Chief
Administrative Judge, acted in concert to put together a package
of documents purporting to document Plaintiffs commission of
various acts of attorney misconduct for presentation to the
Disciplinary Committee, in retaliation for Schorr's resistance
to Justice Kaplan's plan.  (See id. ¶ 56.)

On October 20, 2014, counsel for Judge Prudenti submitted
the package to the Disciplinary Committee's Chief Counsel, Jorge
Dopico, making allegations against Schorr and requesting that
the Disciplinary Committee take "whatever further steps [it] may
deem appropriate."  (Id. ¶ 57.)  Prior to the investigation,
Schorr had no disciplinary history of any kind since admission
to the Bar in 2000.  (Id. ¶ 2.)  Dopico sent Schorr a letter
dated November 13, 2014, informing him that the Disciplinary
Committee had started an investigation against him.  (See id.
¶ 65.)

In a decision dated December 16, 2014, the Court of Claims
found that Schorr had failed to prove his claim of assault
against Officer Katz.  (Id. ¶ 61.)  According to Schorr,
Prudenti, New York's Chief Administrative Judge, had pressured
the Court of Claims to rule against him by threatening to remove

6

the presiding judge from the bench if his action were not dismissed.  (See id. ¶¶ 59, 62-64.)

In response to the Disciplinary Committee's letter, Schorr filed a twenty- page answer, alleging that Justice Kaplan had attempted to orchestrate his false arrest at the October 9 conference, that she had made materially false statements at her deposition, and that his unauthorized recording of the conference was justified by the defense of necessity.  (See id. ¶¶ 66-67.)

In a letter dated April 17, 2015, the Disciplinary Committee issued a private admonition to Schorr, based upon its conclusion that his recording of the October 9, 2013 conference violated 22 NYCRR § 29.1.  (See id. ¶ 68.)  The letter further provided that Schorr had the right to request reconsideration or the institution of formal proceedings within thirty days, and that, "If you demand that formal proceedings be instituted, this Admonition will be vacated and formal charges will be presented."  (Id. ¶ 70.)  The Admonition made no mention of any reopening of the Committee's investigation.  (Id.)  Schorr rejected the Private Admonition and requested the institution of formal proceedings against him.  (Id. ¶ 71.)

7

Kevin Doyle, the Committee's principal staff attorney,
informed the Plaintiff via email on May 14, 2015 that "[g]iven
your rejection of the admonition and your request for a formal
proceedings, the Committee has re-opened its investigation."
(Id. ¶ 72.)  As part of the re-opened investigation, the
Disciplinary Committee requested that Schorr be examined under
oath.  (See id. ¶ 73.)  When Schorr inquired as to the
Committee's authority to reopen its investigation against him,
Doyle responded by threatening to serve Schorr with a subpoena
and to suspend him from the practice of law if he did not
comply.  (Id. ¶ 74.)  Schorr responded by filing this action.

**Applicable Standard**

In deciding a motion to dismiss for failure to state a
claim for which relief can be granted, the Court accepts all
factual allegations in the Complaint as true and draws all
reasonable inferences in favor of the Plaintiff, as the
nonmoving party.  See In re Elevator Antitrust Litig., 502 F.3d
at 50.  The Court then determines whether the Complaint contains
"sufficient factual matter, accepted as true, to state a claim
to relief that is plausible on its face." Ashcroft v. Iqbal, 556

8

U .S. 662, 663 (2009) (quotation omitted).  The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 257 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  Although the Court would normally construe a *pro se* plaintiff's pleading liberally in order to make the strongest possible argument suggested, due to the "special solicitude" afforded in this Circuit to litigants without counsel, that consideration does not apply in cases such as this one where the *pro se* litigant is himself a lawyer.  See Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010).


## Younger Abstention is Appropriate


Younger v. Harris, 401 U.S. 37 (1971), generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.  Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002).  The doctrine "rests foursquare on the notion" that a state proceeding constitutes a sufficient forum for the vindication of federal constitutional rights.  Id.

9

However, under the Supreme Court's recent decision in Sprint
Communications, Inc. v. Jacobs, 134 S.Ct. 584 (2013), Younger
abstention is limited to three important categories of
proceedings: state criminal prosecutions, civil enforcement
proceedings, and "civil proceedings that implicate a State's
interest in enforcing the orders and judgments of its courts."
Mir v. Shah, 569 F. App'x 48, 50 (2d Cir. 2014) (citing Sprint,
134 S.Ct. at 588).

Abstention is appropriate in this instance because states
have a strong policy interest in regulating their courts and the
actions and conduct of the attorneys that practice them.  See
Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457
U.S. 423, 434 (1982) (invoking Younger abstention and declaring
that "[t]he State's interest in the professional conduct of
attorneys . . . is of special importance"); see also Sprint, 134
S.Ct. at 592.  Because "[s]tate-initiated disciplinary
proceedings against lawyers for violation of state ethics rules
constitute civil enforcement proceedings implicating Younger,"
Peters v. Neroni, 598 F. App'x 797, 798 (2d Cir. 2015), the
Court abstains from exercising its jurisdiction over Schorr's
action.

10

There are two "tightly defined" exceptions to the Younger abstention doctrine, the bad faith exception and the extraordinary circumstances exception. Jackson Hewitt Tax Serv., Inc. v. Kirkland, 455 F. App'x 16, 18 (2d Cir. 2012) (citing Younger 401 U.S. at 197-98). Schorr contends that this case falls into the former exception, which applies "where a proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." Diamond "D", 282 F.3d at 199. To establish the bad faith exception to Younger, a plaintiff must show that the party bringing the state action "has no reasonable expectation of obtaining a favorable outcome," but rather brought the proceeding due to a "retaliatory, harassing, or other illegitimate motive." Jackson Hewitt, 455 F. App'x at 18 (citations and quotations omitted).

However, Schorr's bad faith argument lacks sufficient factual foundation to survive a motion to dismiss. Although the allegations that the Defendants mounted an orchestrated, bad faith campaign against the Plaintiff are numerous and extensive (e.g., Complaint ¶ 56 (alleging that Kaplan and Prudenti put together the dossier submitted to the Committee in order to

11

retaliate for Schorr's bringing Kaplan's misconduct to light)),
they are either conclusory in nature or offered on information
and belief, without facts or supporting documentation sufficient
to render the claim plausible.[2]  Cf. Bell Atl. Corp. v. Twombly,
550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer
an agreement does not impose a probability requirement at the
pleading stage; it simply calls for enough fact to raise a
reasonable expectation that discovery will reveal evidence of
illegal agreement.").  Without specific and plausible
allegations supporting the Complaint's allegation of bad faith,
the case is subject to Younger abstention.  See Koltun v. Berry,
No. 13 Civ. 1612, 2013 WL 3816603, at *6 (S.D.N.Y. July 19,
2013); Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 710
n.27 (S.D.N.Y. 2011); Levy v. Town of N. Hempstead, No. 12 Civ.
1777, 2013 WL 5276559, at *6 (E.D.N.Y. Sept. 18, 2013).  In
addition, because Schorr acknowledges that he recorded a court
proceeding without permission and 22 NYCRR 29.1 forbids any such
recording within a New York State courthouse, it cannot be said

---

[2] Schorr does specifically allege that Chief Judge Prudenti threatened to
remove the presiding judge in Schorr's Court of Claims case from the bench if
his case were not dismissed, but offers no evidence for the alleged threat
other than a contention that what he perceives as flaws in the reasoning of
the decision demonstrate that it was a product of pressure, rather than
judicial decisionmaking.  (See Complaint ¶¶ 59-64.)  This allegation, based
primarily on Schorr's disagreement with the substance of the Court of Claims'
opinion, is insufficient to defeat a motion to dismiss.

12

that the Disciplinary Committee action against him has no
reasonable expectation of success.

Moreover, even if the Committee's investigation leads to
formal charges, Schorr will have the right to contest them,
appeal them, or challenge them collaterally in state court via
an Article 78 proceeding.  "Where such state remedies are
available, a federal court should assume that state procedures
will afford an adequate remedy, in the absence of unambiguous
authority to the contrary."  Koltun, 2013 WL 3816603, at *6; see
Diamond "D", 282 F.3d at 202.  To the extent that Schorr alleges
that a fair adjudication in state court is impossible given
Prudenti's authority over the system, the concern is alleviated
by the fact that she left the bench for an academic appointment
last summer.  See Judge Marks replacing Judge Prudenti, N.Y.
Daily Record (Rochester), July 29, 2015, available at
http://nydailyrecord.com/2015/07/29/judge-marks-replacing-judge-
prudenti/.


**Conclusion**


The motion of the Defendants is granted and the Complaint
is dismissed. Leave to replead within 20 days is granted.

13

It is so ordered.

New York, NY
March / 5, 2016

ROBERT W. SWEET
U.S.D.J.

14